FILED

December 14, 2018

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 10:13 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| MATTIE MITCHELL, AS REPRESENTATIVE FOR THE ESTATE OF MICHAEL MITCHELL, Employee, | ) ) ) ) | Docket No. 2016-08-1131 |
| v. | ) | State File No. 92588-2015 |
| BUNGE NORTH AMERICA, Employer, | ) ) | |
| And | ) | |
| ACE AMERICAN INSURANCE CO., Insurance Carrier. | ) ) | Judge Deana C. Seymour |

## COMPENSATION HEARING ORDER

This case came before the Court for a Compensation Hearing on November 28, 2018. Mattie Mitchell asked for death benefits after her husband, Michael Mitchell, died from a heart attack at work. Bunge North America denied the claim, arguing that the heart attack did not arise out of Mr. Mitchell's employment. The Court holds that Mrs. Mitchell did not come forward with sufficient evidence to prove the heart attack arose out of Mr. Mitchell's employment and denies her claim for death benefits.

### History of Claim

*Factual Background*

Michael Mitchell worked as a grain elevator laborer and superintendent for Bunge from 1984 until November 1, 2015, when he died from a heart attack at work. Following her husband's death, Mrs. Mitchell requested a private autopsy. Dr. Thomas Deering, the physician who performed the autopsy, concluded, "The cause of death is atherosclerotic and hypertensive cardiovascular disease. Contributing to the death is pulmonary emphysema. The manner of death is natural."

1

Mrs. Mitchell argued that physical exertion, mental stress, and environmental stress caused Mr. Mitchell's death. During the hearing, Mrs. Mitchell described her husband's exhaustion at the end of each workday and the pain he endured from an old work-related knee injury. She also discussed Mr. Mitchell's headaches and sinus problems, which she attributed to his dust inhalation at work. Mr. Mitchell's daughters, Jada and Michaela Mitchell, testified about helping their father with computer work since he never received computer training, and about the dusty environment in which he worked.

Mrs. Mitchell also relied on the live testimony of Roy Payne and Darnell Mitchell, Jr. as well as the depositions of Mr. Payne and Gregory Thomas. Mr. Payne and Mr. Thomas worked with Mr. Mitchell and were with him when he suffered the heart attack. Neither recalled Mr. Mitchell performing strenuous work that day.

However, Mr. Payne remembered Mr. Mitchell engaging in strenuous labor in the days leading up to the heart attack. Through his affidavit, made an exhibit to his deposition, Mr. Payne explained that Mr. Mitchell repaired something in the "Texas House" a day or two before he died, and the work caused him to sweat, cough, and have difficulty breathing.[1] Mr. Payne remarked that, despite Mr. Mitchell's supervisory position, he worked hard and did everything the other employees did. Mr. Payne also stated they were working approximately ten to twelve hours per day, seven days per week at the time of Mr. Mitchell's heart attack, which occurred during harvest season. He testified about the dustiness of Bunge's work environment and the problems Mr. Mitchell had walking up stairs. He also testified to hearing Mr. Mitchell's supervisor, John Cordel, chastise Mr. Mitchell for his inability to learn the new computer system.

According to Mr. Thomas, immediately before the heart attack, he, Mr. Mitchell, and Mr. Payne were talking in the scale office. Mr. Thomas thought Mr. Mitchell was working on the computer at the time. He estimated they had talked for about fifteen or twenty minutes before the heart attack occurred.[1] Mr. Thomas stated that the scale office had a clean environment. He also noted it had been a laid-back day with only twenty trucks coming to drop grain.

Darnell Mitchell, Jr., Mr. Mitchell's brother, worked for Bunge as well. He estimated they worked fourteen-hour days, seven days per week during harvest season, and he discussed the dusty environment in which they worked. However, he indicated that Mr. Mitchell's office was not dusty and stated that the facility had an elevator so employees did not have to climb stairs.

---

[1] During his deposition, Mr. Payne testified Mr. Mitchell had been in the scale office for ten to fifteen minutes before the heart attack occurred, but at the hearing, he testified they had only been talking for five or ten minutes when the heart attack happened.

In support of its position, Bunge called Mr. Mitchell's supervisor, Mr. Cordel, as well as former safety manager, David Bagley, as witnesses.[2] Mr. Cordel testified that the day Mr. Mitchell died had been slow based on his conversations with Mr. Mitchell. He admitted that, as superintendent Mr. Mitchell would make repairs if something broke. Otherwise, his duties did not typically involve heavy work. His job mainly consisted of sampling grain for quality, operating the scales, and overseeing the operations.

With regard to allegations of stress due to a new computer system, Mr. Cordel acknowledged that Bunge implemented a new system about one year before Mr. Mitchell's death. Four months later, Bunge directed superintendents to learn and use the new system. Mr. Cordel and Mr. Bagley testified that Bunge made training available. Mr. Bagley stated that he offered Mr. Mitchell additional training, which Mr. Mitchell refused. Mr. Cordel indicated that another superintendent helped Mr. Mitchell with extra training. He denied ever threatening Mr. Mitchell's job or complaining to upper management about his lack of computer skills.

Finally, both Mr. Cordel and Mr. Bagley testified that Bunge had a dust removal system to comply with governmental requirements. Mr. Bagley specifically testified that he knew of no complaints about air quality at the Memphis facility and commented that he never wore a mask at the facility. Mr. Bagley also stated that the scale office had no more dust than one's house.

*Medical Evidence*

The medical evidence consisted of testimony from Dr. McGee and Dr. Weinstein for Mrs. Mitchell and Dr. Anderson for Bunge.[3]

Mrs. Mitchell requested a records review from cardiologist Jesse McGee. She asked for Dr. McGee's opinion regarding the cause of her husband's heart attack and death. Dr. McGee reviewed medical records from Methodist Hospital and Mr. Mitchell's cardiologist, Mr. Mitchell's job description and autopsy report, as well as information from Mrs. Mitchell and Mr. Mitchell's co-workers regarding his work environment.

After reviewing these documents, Dr. McGee concluded, "Mr. Mitchell's physical, environmental, and emotional stress related to his employment over time significantly contributed and aggravated his coronary atherosclerotic heart disease." He specifically identified working long hours, exposure to grain dust, and climbing stairs as some of the physical stressors that contributed to Mr. Mitchell's heart attack. According to Dr. McGee, these types of stressors could accumulate over time to cause a heart attack like

---

[2] Bunge also relied on the depositions of Mr. Cordel and Mr. Bagley.

[3] Dr. McGee appeared in-person and by deposition. Dr. Weinstein and Dr. Anderson appeared by deposition.

the one Mr. Mitchell experienced. Dr. McGee ultimately testified that these physical stressors primarily caused Mr. Mitchell's death. However, he also testified that an acute event typically occurs ten to fifteen minutes before the attack, and he did not know of any such event. In addition, he did not realize that Mr. Mitchell worked in a supervisory capacity at the time of his heart attack when he gave his opinion. He admitted he had no training in pulmonology.

Mrs. Mitchell also asked Mr. Mitchell's treating cardiologist, Dr. Joseph Weinstein, to provide a causation opinion. According to Dr. Weinstein, Mr. Mitchell had a history of high blood pressure, hyperlipidemia, coronary atherosclerosis, tobacco use, obesity, and left ventricular dysfunction. When asked to comment on whether Mr. Mitchell's death arose out of his employment, Dr. Weinstein stated that "as there was evidence of increased workload, stress in the workplace, and because his death occurred at work, [he] felt more likely than not [Mr. Mitchell's] myocardial infarction and subsequent death were work-related." He based his opinion on his own medical records, records from Methodist Hospital, the depositions of Mrs. Mitchell and Mr. Mitchell's co-worker, Ron Payne, and the autopsy report. Dr. Weinstein noted that stress "increases your blood pressure" and "can lead to something called plaque rupture, which . . . in the majority of instances is how a heart attack occurs." He also suggested, however, that Mr. Mitchell's heart attack could have happened at home.

Bunge relied on the opinion of Dr. Keith Anderson. According to Dr. Anderson, "there is no identifiable activity preceding this event which could be identified as a trigger for his myocardial infarction." He suggested that the activity would have occurred "in the minutes preceding his heart attack." Dr. Anderson determined, "To a reasonable degree of medical certainty, Mr. Mitchell's employment [had] no causal relationship to his death."

**Legal Principles and Analysis**

At a Compensation Hearing, Mrs. Mitchell must establish all elements of her claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2018). Thus, she must establish that Mr. Mitchell's death arose primarily out of and in the course and scope of his employment with Bunge. Here, the dispute focuses on whether Mr. Mitchell's heart attack arose out of employment rather than whether it occurred in the course of his employment.

An injury "arises primarily out of employment" only if "it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14). This contribution must be established to a reasonable degree of medical certainty, meaning, in the opinion of the treating physician, it is more likely than not, considering all causes. *Id.* at (14)(D).

4

An aggravation of a pre-existing condition is a compensable injury "if it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." *Miller v. Lowe's Home Centers, Inc.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *12 (Oct. 21, 2015). "[I]f the work injury advances the severity of the pre-existing condition, or if, as a result of the pre-existing condition, the employee suffers a new, distinct injury other than increased pain, then the work injury is compensable." *Bradshaw v. Jewell Mechanical, LLC*, 2015 TN Wrk. Comp. App. Bd. LEXIS 16, at *13-17 (June 4, 2015).

Heart attack cases generally fall into one of two categories: (1) those precipitated by physical exertion or strain, and (2) those resulting from mental stress, tension, or some type of emotional upheaval. *Bacon v. Sevier Cnty.*, 808 S.W.2d 46, 49 (Tenn. 1991). Mrs. Mitchell argued that both physical exertion and mental stress, along with environmental stress from inhaling grain dust, resulted in her husband's heart attack. The Court will look at each of these theories in turn.

*Physical Exertion*

If physical activity, exertion, or strain from the employee's work produces a heart attack, or aggravates a preexisting heart condition, the resulting death or disability is the result of an accident arising out of and in the course of the employment. *Id*. at 49-50. If the heart attack results from physical exertion or strain, the employee does not need to show extraordinary exertion or unusual physical strain. *Id*. at 49. Nor does it matter that the employee suffered from pre-existing heart disease, as an employer takes an employee as it finds him. *Id*. However, in physical exertion cases, "there is invariably medical proof of some specific act, incident, or event that . . . set off the attack." *Id*. at 50.

In the present case, none of the proof presented pointed to any specific act, incident, or event. Neither Mr. Payne nor Mr. Thomas, who worked with Mr. Mitchell on the day of his heart attack, recalled him performing strenuous work that day. Both co-workers, as well as Mr. Mitchell's supervisor Mr. Cordel, testified that the day was slow and laid-back. When the heart attack occurred, Mr. Mitchell was talking to Mr. Payne and Mr. Thomas, and possibly working on the computer, in the scale office. No one testified that Mr. Mitchell performed any physical labor on the date of his heart attack.

While Drs. Weinstein and McGee related the heart attack to Mr. Mitchell's work, neither could point to a specific event that triggered the heart attack. Dr. Weinstein pointed to Mr. Mitchell's increased workload as a factor in formulating his causation opinion. Dr. McGee identified working long hours and climbing stairs as some of the physical stressors that contributed to Mr. Mitchell's heart attack. The contributing factors or stressors mentioned by Drs. Weinstein and McGee were gradual or cumulative in nature rather than specific and acute. Moreover, Mrs. Mitchell did not present proof that

Mr. Mitchell climbed the stairs or performed any other physical exertion on the day of his heart attack. In fact, Darnell Mitchell testified that the facility had an elevator so that employees did not have to climb stairs.

Mr. Payne remembered Mr. Mitchell engaging in strenuous labor in the days leading up to the heart attack, but Dr. Anderson testified that if strenuous activity had been a factor, it would have occurred "in the minutes preceding his heart attack." Dr. McGee agreed with this estimation, indicating that an acute event typically precedes a heart attack approximately ten to fifteen minutes before the attack occurs. According to estimates provided by Mr. Payne and Mr. Thomas, they had been talking in the scale office between five and twenty minutes when Mr. Mitchell's heart attack occurred.

Moreover, Drs. McGee and Weinstein testified that Mr. Mitchell's heart attack could have happened at home. Based on the evidence presented, the Court holds that Mrs. Mitchell failed to meet her burden with regard to physical exertion.

*Mental Stress*

Turning to Mrs. Mitchell's theory of mental stress, the Tennessee Supreme Court has held that where there is emotional stress, worry, shock, or tension, "the heart attack must be immediately precipitated by a specific acute or sudden stressful event, rather than generalized employment conditions." *Bacon*, 808 S.W.2d at 52. While excessive and unexpected stress and worry attributable to employment will justify an award of benefits, "the ordinary stress of one's occupation does not because '[e]motional stress, to some degree, accompanies the performance of any contract of employment.'" *Cunningham v. Shelton Sec. Serv., Inc.*, 46 S.W.3d 131, 136-37 (Tenn. 2001). The well-settled rule in Tennessee is that injuries caused by worry, anxiety, or emotional stress of a general nature or ordinary stress associated with an employee's occupation are not compensable. *Id*. The injury must result from "an incident of abnormal and unusual stressful proportions, not the day-to-day mental stresses and tensions to which employees in that field are occasionally subjected." *Id*. at 137.

The mental stress alleged by Mrs. Mitchell centers on Mr. Mitchell's difficulty in learning a new computer system at work and his fear of losing his job because of this difficulty. Several witnesses testified about Mr. Mitchell's frustrations with using the new computer system and the pressure he felt to master it. However, this type of stress would not rise to the level of "excessive and unexpected." Instead, it would fall into the category of "ordinary stress" associated with Mr. Mitchell's occupation, which is not compensable. Accordingly, Mrs. Mitchell cannot prevail on her mental stress theory.

Finally, the Court rejects Mrs. Mitchell's claim that environmental stress from inhaling grain dust at work caused Mr. Mitchell's heart attack. This case presents three different opinions from three different cardiologists. Dr. Weinstein testified that inhaling dust over a prolonged period could lead to pulmonary emphysema, which the autopsy report listed as a contributing factor in Mr. Mitchell's death. Dr. McGee indicated that environmental factors such as grain dust exposure contributed to and aggravated Mr. Mitchell's heart disease. Conversely, Dr. Anderson concluded that exposure to grain dust did not contribute to the development or progression of Mr. Mitchell's heart disease or cause his heart attack.

What this case lacks is an opinion from a pulmonologist. Dr. Weinstein specifically testified that he does not have knowledge and expertise that would allow him to give an opinion regarding whether grain dust can cause emphysema. Dr. McGee testified that he was not trained in pulmonology and did not know what particular level of grain dust exposure Mr. Mitchell had other than what he read in the statements of Mr. Mitchell's co-workers.

Testimony presented at trial varied widely regarding grain dust exposure. Mrs. Mitchell, Jada Mitchell, Michaela Mitchell, and Mr. Payne indicated that grain dust frequently covered the facility. In contrast, Mr. Thomas testified that the scale office had a clean environment, and Darnell Mitchell testified that it was not dusty in Mr. Mitchell's office. Further, Mr. Cordel and Mr. Bagley stated that the facility had a dust removal system in place to keep dust at acceptable levels according to governmental requirements, and both noted that the facility was not very dusty. Considering no medical proof from a pulmonologist to connect the inhalation of grain dust to Mr. Mitchell's heart attack and death and varied testimony regarding Mr. Mitchell's exposure to grain dust, the Court holds that Mrs. Mitchell failed to meet her burden on this theory as well.

Based on the foregoing, the Court holds that Mrs. Mitchell did not come forward with sufficient evidence to prove the heart attack arose out of Mr. Mitchell's employment. Therefore, it denies Mrs. Mitchell's claim for death benefits.

**IT IS SO ORDERED.**

**ENTERED on December 14, 2018.**

_____
**JUDGE DEANA C. SEYMOUR**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:

1. Form C-20 Employer's First Report of Work Injury or Illness
2. Form C-41 Wage Statement
3. Death Certificate
4. Final Autopsy Report
5. Deposition transcript of Mr. David Bagley
6. Deposition transcript of Mr. John Cordel
7. Deposition transcript of Dr. Keith Anderson
8. Medical Records filed by parties on November 13, 2018 (Collective)
9. Job Description
10. Sample of Particulate/Grain Dust from Bunge Work Site
11. Approval of Workers' Compensation Agreement dated April 13, 2014
12. Marriage Certificate
13. Birth Certificate of Jada Mitchell
14. City of Memphis EMS Service Bill
15. M.J. Edwards Funeral Bill
16. Performance Evaluations 2009-2015
17. Deposition Transcript of Dr. Jesse McGee
18. Deposition Transcript of Dr. Joseph Weinstein
19. Deposition Transcript of Gregory Thomas
20. Deposition Transcript of Roy Payne
21. Medical records from Memphis Orthopaedic Group
22. 2015 Income tax return of Michael and Mattie Mitchell
23. Photographs (Collective)
    a. Mr. Mitchell's office
    b. Facility from storage building
    c. Offices
    d. Dump pit area
    e. Scale office
    f. Scale office
24. Additional Photographs (a-c) (Collective)

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice along with Bunge's objection and Ms. Mitchell's reply
3. Request for Initial Hearing
4. Scheduling Order
5. Transfer Order
6. Joint Motion to Amend the Scheduling Order
7. Amended Scheduling Order
8. Revised Amended Scheduling Order
9. Bunge's Motion for Summary Judgment
10. Bunge's Memorandum of Law in Support of its Motion for Summary Judgment
11. Bunge's Statement of Undisputed Facts in Support of its Motion for Summary Judgment with attachments
12. Order on Status Hearing
13. Second Amended Scheduling Order
14. Ms. Mitchell's Response in Opposition to Motion for Summary Judgment with attachments
15. Bunge's Reply Memorandum of Law in Support of Motion for Summary Judgment with attachments
16. Bunge's Reply Statement of Undisputed Facts with attachments
17. Order Denying Bunge's Motion for Summary Judgment
18. Motion of Continuance of Workers' Compensation Hearing
19. Order Granting Motion to Continue Compensation Hearing
20. Appeals Board's Order Vacating and Remanding Trial Court's Order Denying Bunge's Motion for Summary Judgment
21. Amended Order Denying Bunge's Motion for Summary Judgment
22. Appeals Board's Order Affirming and Remanding Trial Court's Order Denying Bunge's Motion for Summary Judgment
23. Scheduling Order
24. Bunge's Motion to Exclude Plaintiff from Using Expert Testimony of Joseph Weinstein MD Regarding Causation with attachments
25. Ms. Mitchell's Response in Opposition to Bunge's Motion to Exclude Plaintiff from Using Expert Testimony of Joseph Weinstein MD Regarding Causation with attachments
26. Bunge's Reply in Support of Motion to Exclude Plaintiff from Using Expert Testimony of Joseph Weinstein MD Regarding Causation
27. Ms. Mitchell's Prehearing Statement with attachments
28. Bunge's Prehearing Statement
29. Agreed Stipulations of Fact
30. Post-Discovery Dispute Certification Notice with additional issues attached

31. Order Denying Bunge's Motion to Exclude Plaintiff from Using Expert Testimony of Joseph Weinstein MD Regarding Causation

Stipulations

1. Employee suffered a heart attack while at work on November 1, 2015.
2. Present with Mr. Mitchell prior to and during his heart attack were co-workers, Roy Payne and Gregory Thomas.
3. Employee was in the scale office when his heart attack occurred.
4. On November 5, 2015, Dr. Thomas Deering performed an autopsy of Mr. Mitchell.
5. Mr. Mitchell earned $53,130.16 in the 52 weeks prior to his heart attack.
6. Mr. Mitchell's average weekly wage was $1,021.74.
7. The exhibited photographs accurately depict the Bunge facility for purposes of layout.
8. The exhibited EMS charge of $1,035.00 and burial charge of $4,750.00 are hereby stipulated to, although Bunge denies legal liability for the same.
9. Mr. Mitchell had a prior workers' compensation injury to his knee on or about April 14, 2014.
10. Mr. Mitchell reached MMI for the prior knee injury on or about March 19, 2015.
11. Mr. Mitchell suffered from other pre-existing conditions, including but not limited to, coronary heart disease, sinusitis, atherosclerosis, high blood pressure, obesity, past history of tobacco use, history of left ventricular ejection fractions, diabetes, moderate emphysema, stent placement, and hyperlipidemia.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on December 14, 2018.

| Name | Via Email | Service sent to: |
|---|---|---|
| Julian T. Bolton, Esq., Employee's Attorney | X | bolllaw@aol.com |
| S. Newton Anderson, Esq., Employer's Attorney | X | sna@spicerfirm.com |

_____
Penny Shrum, Court Clerk
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov